Daniel, J.
The question, upon the decision of which depends the judgment to be given in this case, is a nice and difficult one. It is res integra here; and the counsel on either side and the court after diligent search, have failed to find any authority in the British Reporters or text books which would seem to rule it. The only case cited at the bar in which the question has been fully discussed and distinctly adjudged is the case of Ganaway v. The State, 22 Alab. R. 772, relied on by the counsel of the plaintiff in error—in their printed argument. In that case after several continuances of a *511 prosecution for an assault and battery for which Q-anaway had been indicted, the indictment was lost or destroyed, and the inferior court upon the motion of the solicitor, after notice to the accused, allowed a paper, which was offered as, and proved to be, a correct copy of the original indictment, to be substituted in its stead, and proceeded with the trial upon the substituted copy. Upon an appeal to the Supreme court the case was there ably argued, and the majority of the court came to the conclusion that the judgment of the Circuit court should be reversed. The grounds of their decision are very forcibly stated in the opinion of Judge Phelan. After conceding the right of the court to supply or substitute any part of the record which has been lost or destroyed in a civil case, he proceeds to remark that “ In criminal proceedings we are, in many cases, bound by settled principles of law and practice, to consider not that which abstractly exists, but a certain visible external form as essential to the legal existence and sufficiency of the thing itself. For instance, what authority in law (he asks) will protect an officer in arresting my person on a criminal charge or require of me to submit to the arrest ? 'Will a copy of a warrant do ? Hot at all. It must be the original, lawful warrant itself which I have a right to call for and inspect. This rule, we are inclined to think, has been commonly applied to indictments. The prisoner has been supposed to have a right to have an inspection of the indictment found, and to be arraigned on that only.
But conceding that a declaration and an indictment are alike in many respects, in some other respects there is a very marked difference between them. A declaration is a statement of his cause of action by the party himself or his counsel not under oath. An indictment is a statement of the facts which constitute the alleged offence against the public, on the part of the *512 accused made under oath by a grand jury, and which to be good in law must have certain formalities; and by the constitution of this State certain words are essential. The one is good even though it be not signed by counsel. The other is nothing if it does not bear the name of the foreman of the grand jury and the words “a true bill.” These are indispensable marks of an indictment. The one may be changed at pleasure by leave of the court. The other cannot be changed or altered in the slightest degree by any power after it has been returned into court and the grand jury is discharged. The statutes of jeofmls which in general terms authorize corrections and amendments in process and pleadings have never been held to apply to indictments.”
“It may be granted, the court has and ought to have power to supply copies or duplicates of all parts of the record or proceedings which emanated from it or under its authority in the first instance; because the power which could make the original, ought to be at all times able to supply a copy, if that be lost or destroyed. But this power does not embrace an indictment. The court has no power to make an indict'ment or to direct one to be made; that power resides exclusively with the grand jury. Admitting then that a court may supply or substitute whatever part of the proceedings it has power to issue or create in the first instance, yet the principle will not embrace an indictment, because the court has no power to make that or direct it to be made. In the matter of indictments, the grand jury are the sole judges under their oath of the propriety of their own action.” The judge also stated in the course of his opinion that with the exception of a single circuit, the rule of practice forbidding the substitution of an indictment prevailed throughout the State.
*513 In the dissenting opinion delivered by Judge Gibbons, the only case cited by him as an instance in which it had been held allowable to try a person indicted, upon a copy of the indictment, was the case of John, a slave v. The State, 2 Alab. R. 290. In that case, it is true it was held that where several persons are indicted and the venue is changed by less than the whole number, those who change the venue are to be tried on a copy of the indictment. I have been unable however, to discover anything in that case which countenances the proposition that an accused who has not obtained a change of venue may be tried against his consent upon any substitute for the original indictment. On the contrary, I think, the case looks the other way. There the venue had been changed at the instance of one of several persons indicted for a felony, and an order had been made sending not only a transcript of the record but also the original indictment to the court to which the venue was changed. Subsequently another order was made requiring the clerk of the last mentioned court to return the original indictment; which was executed, and the party who had not obtained a change of venue was tried on the original indictment so returned, and convicted. And on his appeal it was insisted, in his behalf, that the prosecution had been discontinued and jurisdiction of the court over the case lost inconsequence of the execution of the order directing the original indictment to be sent to the court to which the venue, as to one of the parties, had been changed.
Goldthwaite J., in delivering the opinion of the court sustaining the judgment of the court below, so far as it turned on the question arising upon the orders of the court below, above mentioned, remarked—“The presiding judge at the time of permitting the change of venue as to Anderson, was probably misled by the generality of the rule of this court with respect to changes of venue. *514 The rule was not intended to apply to criminal eases where more persons than one are indicted, when one " only shall apply for a change of venue. In such a case if the accused makes out a sufficient cause, he is entitled by statute to a change of venue; but the original papers of right appertain to the court, which retains jurisdiction over such of the accused as do' not desire, or cannot procure a change of venue. A transcript of the record which must necessarily include a transcript of the indictment, as well as of all other original papers, is all which can regularly be transmitted to the court to which the venue is changed. The accused who under such circumstances, asks for a change of venue may be tried on such a transcript, and his consent, if that is to be considered as essential, will be inferred from his application. If the practice was otherwise, the monstrous absurdity might result, that the prosecution against the others accused might be terminated or indefinitely delayed by the measure of grace accorded the one who sought elsewhere a trial which he might not obtain in an impartial manner in the county where the indictment was preferred.” He then proceeded to show that the irregularity which had occurred, of sending the original papers to the court to which the venue had been changed, had worked no injury to the plaintiff in error; that.the order for the re-transmission of the indictment to the court in which the prosecution originated was right; and that there had been no discontinuance of the case.
There is nothing in the decision of the court nor in its opinion bearing adversely to the case of the plaintiff in error here. He has had no agency in creating the necessity or exigency by which it is sought to justify his trial on a substituted indictment. He is in no degree chargeable with the absence of the original. He has not procured nor sought a change of venue. He has *515 given no consent express or implied to be tried on anything short of the original, identical indictment found.’
The case of The People v. Burdock, &c., 3 Caines R. 101, cited by the Attorney General, does not necessarily involve the decision that a person accused may, against his consent, be tried on a copy of a lost indictment. The reporter, it is true, in his syllabus states the case as deciding the general proposition that, if a record of an indictment be lost the court will grant leave to file one nunc pro tunc. But on examination of the case it will be seen that it does not go to any such length. The report of the case is very brief and I give it entire: “An indictment found against the defendants for a forcible entry and detainer in April term 1798, had, on being removed into this court been quashed and restitution ordered, but the record of it could not on search in the clerk’s office, be found. Hiker applied for leave to file a record nunc pro tunc, on an affidavit by the attorney employed in the prosecution, disclosing the above facts, and that on examination of his register he found not only that a record had been duly filed, but that he actually obtained an exemplification of it which had been lost. Granted accordingly.” When it is seen that in that case the motion was made in 1805 in respect to an indictment found in 1798—-which had been long since quashed—it is obvious that the decision then made, is no precedent for the case under consideration. It is manifest that there the substituted indictment was to be used for some purpose other than the trial of the person indicted.
The only case, which I have been able to find, in addition to those cited at the bar, bearing immediately on the question in hand, is that of The State v. Harrison, 10 Yerger’s R. 512. The decision and reasoning of the Supreme court of Tennessee in that case, are strongly in favor of the plaintiff in error in this. In that case after *516 the prisoner had been regularly indicted, tried and found guilty of a felony, by the verdict of a jury, he moved in arrest of judgment, on the ground-that there was no bill of indictment on record against him. It appeared that the indictment had been lost or mislaid during the trial and upon diligent search could not be found; and the solicitor thereupon moved the court to make a copy of the indictment together with certain affidavits, proving very fully that it was a correct copy, a part of the cause, which was done. The entiy made upon the record was as follows: “State v. Harrison. The attorney general appeared in open court and moved the court that the following copy of the indictment in this case and the affidavits annexed be made a part of the record in said cause. Whereupon the court upon examination and inspection of the same, order the same to be spread upon the minutes and made apart of the record in this cause;” and a copy of the indictment and affidavits annexed was also inserted in the entry. In a bill of exceptions the judge recited that the copy of the indictment was filed upon record by him not merely from the affidavits “but because the court was fully satisfied, that said copy of said indictment so ordered and made part of the record, was an exact literal copy of the original indictment, not only from the affidavits appended to said copy, but from the recollection and memory of the court itself.” The Supreme court held that no judgment could be rendered against the prisoner upon a copy of the indictment thus spread on the records of the court below; and that the case was one proper for arrest of judgment.
In delivering the opinion of the court, Turley J., after considering the general power of a court to alter and supply from its own memory alone, any order judgment or decree pronounced by it at the same term, qualifies the concession with the remark that the principle doubtless applies with more force to things which have ema *517 sated from the court itself, for the reason that the judge may well recollect what11 he has himself directed to be done and find it impossible, to remember what has been done by others. And he then proceeds to say, “ If the indictment could be supplied from the memory of the judge the record must show explicitly and certainly that it was so done. The recital in the bill of exceptions does not amount to this. To establish the principle that a judge might supply a lost bill of indictment upon the affidavit of others independent of his own recollection would, as we think, be exceedingly dangerous to the lives and liberty of the citizens; and we cannot do so. We think we go far enough in saying this may be done upon the memory of the judge.”
The provisions of chapter 180 of the Code, allowing papers, “in any cause,” lost or destroyed to be substituted by an authenticated copy of what is lost or destroyed or proof of the contents thereof, have obviously no application to the case. Though the language of those provisions is broad enough to cover the loss of papers in criminal prosecutions, yet, from the general frame and tenor of this chapter, and from its position in the Code, as one of a series of chapters under the title of (51) “Proceedings in civil suits,” considered in connexion with the declaration of the design set forth in the preamble of the Code, to arrange the general statutes of the commonwealth “in appropriate titles, chapters and sections,” it is manifest that the remedy proposed by the provisions in question, applies to the loss or destruction of papers in civil causes only.
Upon the whole it seems to me that the plaintiff in error is’entitled to a judgment of this court in his favor. There is no legislative provision regulating the practice in his case; there is no authoritative decision in England or Virginia ruling the point raised by him, against him; whilst the weight of the few adjudications on the *518 question by the courts in this country, of which we have any reports, is clearly in his favor. In this state of the law I do not think we are authorized by affirming the judgment to introduce a practice which would tend to impair the efficiency of one of those guards which the law has provided for the protection and security of the citizen. Whenever, on a trial, the original indictment is substituted by parol proof of its contents, the accused is necessarily exposed to the hazard of being tried for, and convicted of, a charge differing, in greater or less degree, from that preferred by the grand jury. To expose to such a hazard an accused who is nowise responsible for the loss or destruction of "the original indictment, seems to me to be hardly in accordance with the spirit that regulates the proceedings in criminal trials i and I am for reversing the judgment.
The other judges concurred.in the opinion of Daniel J.
Judgment reversed.